UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.:
AT LAW AND IN ADMIRALTY

THERESA BURTON,
TORIN HURST,
BRITTANY ELLOIE,
BRITTANY ELLOIE as parent and natural guardians of T.H., a minor child,
STEVEN ELLOIE JR.,
SHANTELL DIXON,
SHANTELL DIXON and STEVEN ELLOIE JR. as parents and natural guardians of S.E., a minor,
JERENISE JASON,
ALONZO JASON,
SHANONA MCCELOS,
SHANONA MCCELOS as parent and natural guardian of J.M., a minor,
JIREIA MCCELOS,
CORNELIUS MCCELOS,
MONIQUE JASON,
DOLORES JASON,
STEPHANIE REED,
HANNAH JASON,
LONNIE REED,
CARAMECA JASON,
LATONYA ELLOIE,
STEVEN ELLOIE, SR.,
KIANYO FOUCHA,
KIANYO FOUCHA as parent and natural guardian of C.F., a minor,
MELJANAY MEREDITH,
DORA CUREAUX,
MARY BEAUCHAMP,
ERRICK BEAUCHAMP,
SHARONA BEAUCHAMP,
DELORES JONES,
RAYMOND RUPERT,
MICHELLE RUPERT,
HANNAH RUPERT,
ABIGAIL RUPERT,
BETHANY RUPERT,
VICTORIA RUPERT,
MICHELLE RUPERT and RAYMOND RUPERT as parents and natural guardians of J.R., a minor,
KALEB SCHULER

       Plaintiffs

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE,

       Defendant.

_____/

1

## COMPLAINT FOR DAMAGES

The Plaintiffs THERESA BURTON, CHESITY BOUTTE, TORIN HURST, BRITTANY ELLOIE, BRITTANY ELLOIE as parent and natural guardians of T.H., a minor child, STEVEN ELLOIE JR., SHANTELL DIXON, SHANTELL DIXON and STEVEN ELLOIE JR. as parents and natural guardians of S.E., a minor, JERENISE JASON, ALONZO JASON, SHANONA MCCELOS, SHANONA MCCELOS as parent and natural guardian of J.M., a minor, JIREIA MCCELOS, CORNELIUS MCCELOS, MONIQUE JASON, DOLORES JASON, STEPHANIE REED, HANNAH JASON, LONNIE REED, CARAMECA JASON, LATONYA ELLOIE, STEVEN ELLOIE, SR., KIANYO FOUCHA, KIANYO FOUCHA as parent and natural guardian of C.F., a minor, MELJANAY MEREDITH, DORA CUREAUX, MARY BEAUCHAMP, ERRICK BEAUCHAMP, SHARONA BEAUCHAMP, DELORES JONES, RAYMOND RUPERT, MICHELLE RUPERT, HANNAH RUPERT, ABIGAIL RUPERT, BETHANY RUPERT, VICTORIA RUPERT, MICHELLE RUPERT and RAYMOND RUPERT as parents and natural guardians of J.R., a minor, and KALEB SCHULER were passengers aboard the Carnival Glory, hereby sues the Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter "Defendant" or "Carnival") and files this Complaint for Damages and says:

### THE PARTIES AND JURISDICTION

1.    This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorney's fees.

2.    **THE PLAINTIFFS.**

   a.  The Plaintiff THERESA BURTON is *sui juris* and is a citizen and resident of Baton Rouge, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

b. The Plaintiff CHESITY BOUTTE is *sui juris* and is a citizen and resident of Lafayette, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

c. The Plaintiff TORIN HURST is *sui juris* and is a citizen and resident of New Orleans, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

d. The Plaintiff BRITTANY ELLOIE is *sui juris* and is a citizen and resident of New Orleans, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

e. The Plaintiff BRITTANY ELLOIE as parent and natural guardians of T.H., a minor child.  BRITTANY ELLOIE brings this suit individually and as parent and natural guardian of her daughter T.H.  The Plaintiff BRITTANY ELLOIE is *sui juris* and citizens and residents of New Orleans, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

f. The Plaintiff STEVEN ELLOIE JR. is *sui juris* and is a citizen and resident of New Orleans, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

g. The Plaintiff SHANTELL DIXON is *sui juris* and is a citizen and resident of Marrero, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

3

h.  The Plaintiff SHANTELL DIXON and STEVEN ELLOIE JR. as parents and natural guardians of S.E., a minor.  SHANTELL DIXON and STEVEN ELLOIE JR. brings this suit individually and as parent and natural guardian of their daughter S.E.  The Plaintiffs SHANTELL DIXON and STEVEN ELLOIE JR. are *sui juris* and citizen and resident of Marrero, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

i.  The Plaintiff JERENISE JASON is *sui juris* and is a citizen and resident of New Iberia, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

j.  The Plaintiff ALONZO JASON is *sui juris* and is a citizen and resident of Baton Rouge, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

k.  The Plaintiff SHANONA MCCELOS is *sui juris* and is a citizen and resident of Batton Rouge, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

l.  The Plaintiff SHANONA MCCELOS as parent and natural guardian of J.M., a minor.  SHANONA MCCELOS brings this suit individually and as parent and natural guardian of her son J.M.  The Plaintiff SHANONA MCCELOS is *sui juris* and citizen and resident of Baton Rouge, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

m.  The Plaintiff JIREIA MCCELOS is *sui juris* and a citizen and resident of Natchitoches, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

n.  The Plaintiff CORNELIUS MCCELOS is *sui juris* and a citizen and resident of Baton Rouge, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

o.  The Plaintiff MONIQUE JASON is *sui juris* and a citizen and resident of New Orleans, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

p.  The Plaintiff DOLORES JASON is *sui juris* and a citizen and resident of New Orleans, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

q.  The Plaintiff STEPHANIE REED is *sui juris* and a citizen and resident of New Orleans, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

r.  The Plaintiff HANNAH JASON is *sui juris* and a citizen and resident of New Orleans, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

s.  The Plaintiff LONNIE REED is *sui juris* and a citizen and resident of New Orleans, Louisiana for purposes of diversity and brings an action with a matter

in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

t.   The Plaintiff CARAMECA JASON is *sui juris* and a citizen and resident of St. Rose, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

u.   The Plaintiff LATONYA ELLOIE is *sui juris* and a citizen and resident of New Orleans, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

v.   The Plaintiff STEVEN ELLOIE, SR. is *sui juris* and a citizen and resident of New Orleans, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

w.  The Plaintiff KIANYO FOUCHA is *sui juris* and a citizen and resident of New Orleans, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

x.   The Plaintiff KIANYO FOUCHA as parent and natural guardian of C.F., a minor.  KIANYO FOUCHA brings this suit individually and as parent and natural guardian of her son C.F.  The Plaintiff KIANYO FOUCHA is *sui juris* and citizen and resident of New Orleans, Louisiana for purposes of diversity.

y.   The Plaintiff MELJANAY MEREDITH is *sui juris* and a citizen and resident of New Orleans, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

z. The Plaintiff DORA CUREAUX is *sui juris* and a citizen and resident of New Orleans, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

aa. The Plaintiff MARY BEAUCHAMP is *sui juris* and a citizen and resident of Baton Rouge, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

bb. The Plaintiff ERRICK BEAUCHAMP is *sui juris* and a citizen and resident of Baton Rouge, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

cc. The Plaintiff SHARONA BEAUCHAMP is *sui juris* and a citizen and resident of Baton Rouge, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

dd. The Plaintiff DELORES JONES is *sui juris* and citizen and resident of St. Rose, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

ee. The Plaintiff RAYMOND RUPERT is *sui juris* and a citizen and resident of Abbeville, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

ff. The Plaintiff MICHELLE RUPERT is *sui juris* and a citizen and resident of Abbeville, Louisiana for purposes of diversity and brings an action with a

matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

gg. The Plaintiff HANNAH RUPERT is *sui juris* and a citizen and resident of Lafayette, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

hh. The Plaintiff ABIGAIL RUPERT is *sui juris* and a citizen and resident of Lafayette, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

ii. The Plaintiff BETHANY RUPERT is *sui juris* and a citizen and resident of Lafayette, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

jj. The Plaintiff VICTORIA RUPERT is *sui juris* and a citizen and resident of Abbeville, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

kk. The Plaintiff MICHELLE RUPERT and RAYMOND RUPERT as parents and natural guardians of J.R., a minor. MICHELLE RUPERT AND RAYMOND RUPERT bring this suit individually and as parents and natural guardians of their son J.R.  The Plaintiff MICHELLE RUPERT and RAYMOND RUPERT are *sui juris* and citizen and resident of Abbeville, Louisiana for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

ll.   The Plaintiff KALEB SCHULER is *sui juris* and a citizen and resident of Denver, Colorado for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

3.    **THE DEFENDANT**. The Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter referred to as CARNIVAL or Defendant or the cruise line), a citizen of a foreign nation of Panama, is incorporated outside of the state of Florida, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami Dade County, Florida.  At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

4.    **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where each Plaintiff's matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs both individually and collectively and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333.  Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5.    **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

(a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

### OTHER ALLEGATIONS COMMON TO ALL COUNTS

7.     **DATE OF THE INCIDENT**.  The incident occurred on December 20, 2019.

8.     **LOCATION OF THE INCIDENT.**   This incident involved the Carnival *Glory* which crashed into the Carnival *Legend*.  The Carnival *Glory* crashed into the Carnival *Legend* while attempting to maneuver the Carnival *Glory* near the dock at Cozumel, Mexico.  This crash occurred while the Plaintiffs were passengers onboard the Carnival *Glory*.  Accordingly, the Plaintiffs' claims are governed by the General Maritime Law.

9.     **STATUS OF THE PLAINTIFFS AT THE TIME OF THE INCIDENT.** At all times material hereto, the Plaintiffs were passengers on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

10.     **DESCRIPTION OF THE INCIDENT.** Carnival owes a duty of reasonable care under the circumstances.  The circumstances giving rise to this cause of action are as follows.  Carnival's ships dock in numerous ports on a repetitive ongoing basis.  Each Carnival ship is assigned a designated itinerary for a period of time planned and organized by Carnival.  Carnival also knows that certain ports are always part of certain cruise ships' itineraries.  Certain ports have been part of Carnival's cruise itineraries for decades.  Therefore, Carnival is very familiar with the coordination, process, safety procedures, prevailing conditions, locations and other circumstances involved in safely docking and/or maneuvering its ships at and/or near ports on its itineraries, including the port at Cozumel, Mexico.

11.     Carnival planned and organized the Carnival *Glory* and Carnival *Legend*'s itineraries such that both cruise ships were scheduled to dock at the port in Cozumel, Mexico on December 20, 2019.  The officers of the Carnival *Glory* and of the Carnival *legend* were in control

of the movements of the respective ships.  At all times material the officers of both the Carnival *Glory* and Carnival *Legend* were employees of the Defendant.  Carnival's officers attempted to maneuver the Carnival *Glory* near the dock.  Carnival's officers failed to maintain a proper lookout either by sight, live video feed, global positions, other electronic means and/or by use of other officers or crew.  Carnival's officers failed to control the Carnival *Glory* so as to avoid collision and/or allision with other vessels or fixed objects, including the Carnival *Legend*.  Because of these failures, Carnival's officers caused the Carnival *Glory* to crash into the Carnival *Legend*.  At the time of this crash, the Plaintiffs were all passengers onboard the Carnival *Glory*.  This sudden and violent crash caused Carnival's passengers including the Plaintiffs to fall, lose balance, strike their bodies on features, items and/or furniture inside the ship, and/or caused furniture and/or other objects inside the ship to strike the Plaintiffs' bodies.  As a result of this incident the Plaintiffs suffered severe and permanent injuries.  These permanent injuries significantly affect the life and abilities of the Plaintiffs.

12.     During the crash, Carnival failed to comply with numerous applicable industry standards, statutes, and/or regulations including but not limited to the following:

   a.  Inland and International Navigation Rule 5 (33 CFR 83.05) which mandates that every vessel shall at all times maintain a proper look-out by sight and hearing as well as by means appropriate in the prevailing circumstances and conditions so as to make full appraisal of the situation and of the risk of collision.

   b.  Inland and International Navigation Rule 6 (33 CFR 83.06), Safe Speed, which mandates that every vessel shall at all times proceed at a safe speed so that he or she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions;

   c.  Violating Inland and International Navigation Rule 7 (33 CFR 83.07(a) and (b)), Risk of Collision, which mandates that every vessel shall use all available means

appropriate to the prevailing circumstances and conditions to determine if risk of collision exists.

13.     **NOTICE**: Carnival knew or should have known about numerous prior incidents involving maritime collisions and/or allisions. These include incidents involving Carnival and/or its subsidiaries as well other incidents widely featured and/or reported in the news and maritime industry. Carnival knew or should have reasonably known about the following highly reported cruise ship and/or large vessel collisions and/or allisions:

    a.  MSC *Opera* in Venice, Italy on June 2, 2019: The Opera suffered from an engine failure.  The failure caused the engine to be blocked with its thrust which caused the ship to accelerate. The MSC *Opera* crashed into the San Basilio dock. *See* https://www.npr.org/2019/06/02/729075426/massive-cruise-ship-crashes-into-port-in-venice-injuring-at-least-5; https://www.kpbs.org/news/2019/jun/02/massive-cruise-ship-crashes-into-port-in-venice/;

    b.  Norwegian *Epic* in Puerto Rico on February 12, 2019: The Epic ended up off off course in Puerto Rico to deal with reported mechanical issues.  The Epic drifted off course due to "prevailing wind" and crashed into two mooring points, damaging both. *See* https://www.insider.com/norwegian-cruise-ship-filmed-crashing-into-a-pier-in-puerto-rico-2019-2;

    c.  Carnival *Horizon* in Manhattan, New York on August 28, 2018: The Carnival *Horizon* was arriving at Pier 90 at West 50th Street past the West Side Hightway and smashed into the dock while docking at the pier. https://www.nbcnewyork.com/news/local/carnival-cruise-ship-collides-with-dock-on-manhattans-west-side-officials/1823471/;

    d.  Celebrity *Infinity* in Ketchikan, Alaska on June 3, 2016: The Celebrity *Infinity* crashed into the Ketchikan dock.  *See* https://www.adn.com/alaska-news/2016/06/03/video-cruise-ship-crashes-into-ketchikan-dock/

e. Costa Crociere *Costa Concordia* off the coast of Italy on January 13, 2012: Costa Crociere is a wholly owned subsidiary of Carnival Corporation. The *Costa Concordia* struck the rocking outcrop while travelling approximately 16 knots off Isola del Giglio, Italy. The crash caused the vessel to list to the port side, ground just north of the village of Giglio, and rest with most of the starboard side underwater. https://en.wikipedia.org/wiki/Costa_Concordia

f. Staten Island Ferry *Andrew J Barberi* St. George Terminal, New York: The Staten Island Ferry, *Andrew J. Barberi*, crashed into a concrete maintenance pier at the St. George Terminal on October 15, 2003. https://en.wikipedia.org/wiki/2003_Staten_Island_Ferry_crash

Carnival therefore knew or should have known that it must monitor wind, sea, current and tide conditions with docking, maintain a properly lookout; proceed at a safe speed, coordinate docking; and/or take all reasonable precautions to avoid collision and/or allision when docking and/or maneuvering its cruise ships near ports and/or other vessels. Carnival also documents collisions and/or allisions in various ways. That documentation includes minutes of meetings, emails, voyage logs, and/or internal investigations, audits, root cause analysis and/or action reports. Therefore, the cruise line had long-standing actual and/or constructive notice of the dangers caused when cruise ships are not steered and/or operated in a reasonably safe manner.

## COUNT I:
## NEGLIGENCE

14. The Plaintiffs hereby adopts and re-alleges each and every allegation in Paragraphs 1- 13 above.

15. This Count seeks to hold Carnival liable for its negligence which caused the collision and/or allision during which the Carnival *Glory* struck the Carnival *Legend*. At all times material to this action, Carnival owed the Plaintiffs a duty to exercise reasonable care under the

circumstances.  *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004); *Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991).

16.     Carnival knew or should have known that its crew must maintain a proper lookout when moving its cruise ships near ports and/or other cruise ships.  To reasonably maintain a properly look out, Carnival knew or should have known that its crew must maintain sight either by live video feed, global positions, other electronic means and/or by use of other officers or crew. Carnival knew or should have known that Carnival's crew must analyze the prevailing conditions and area surrounding Carnival's ships to fully assess the situation and risk of collision and/or allision before moving Carnival's vessels.  Based on years of experience, Carnival also knew or should have known that its crew must operate its ships at a safe speed.  Carnival knew or should have known that its crew must proceed at a speed which Carnival's crew could reasonably avoid collision and/or allision and stop within a distance appropriate to the prevailing circumstances and conditions which include but are not limited to wind, sea, current and tides.  Carnival also knew or should have known that Carnival's crew must use all available means appropriate to the circumstances and conditions to determine if risk of collision and/or allision exists.  Carnival knew or should have known its crew must properly coordinate docking with other vessels, analyze the prevailing conditions including monitoring wind, sea, current and tides, and/or properly communicate with other surrounding vessels before proceeding.

17.     Carnival, acting through its crew and/or personnel, breached its duty of care to act reasonably under the circumstances.  Carnival breached its duties to the Plaintiffs by its actions and conduct.  Carnival failed to monitor the wind, sea, current and tides.  Carnival failed to keep a proper lookout by failing to maintain sight by live video feed, global positions, other electronic means and/or by use of other officers or crew.  Carnival failed to coordinate docking.  Carnival failed to avoid the collision and/or allision when the Carnival *Glory* struck the Carnival *Legend*. Carnival failed to monitor the wind, sea, current and tides.   Carnival failed to properly communicate and/or coordinate its movements with surrounding vessels.  Carnival failed to

reasonably analyze and assess the prevailing conditions to determine the risk of collision and/or allision. Carnival failed to proceed at a safe speed which it could reasonably avoid collision and/or allision and stop within a distance appropriate to the prevailing circumstances and conditions. Carnival also failed to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and/or Oregon Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. Carnival's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

18.     As a direct and proximate result of Carnival's negligence, the Plaintiffs suffered severe and permanent injuries. Had Carnival acted reasonably under the circumstances, Carnival would not have caused the Carnival *Glory* to strike the Carnival *Legend*. The Plaintiffs would therefore never have been injured.

a.   At the time of this incident Plaintiff THERESA BURTON was in her cabin standing in front of Carnival's dresser. As a direct and proximate result of the collision, BURTON smashed her knees into the dresser which caused severe and permanent injuries.

b.   At the time of this incident the Plaintiff CHESITY BOUTTE was attempting to take a video and photograph of the ships on Deck 3. As a direct and proximate result of the collision, BOUTTE smashed her head on the glass of the window and was thrown down on top of two other passengers, JERENISE JASON and SHANTELL DIXON which caused severe and permanent injuries.

c.   The collision caused the Plaintiff TORIN HURST to fall on the dresser inside his cabin and strike his right knee on the drawer and his back on a cabin mirror which caused severe and permanent injuries.

d.   At the time of the incident the Plaintiff BRITTANY ELLOIE was bathing her two-year-old daughter T.H. The force of the collision caused BRITTANY ELLOIE to

15

strike her forehead on the faucet, strike the back of her head on the back wall, and fall to the floor of the bathroom which caused here severe and permanent injuries.

e.   At the time of the incident T.H. was in the shower and the force of the collision caused T.H.'s mother BRITTANY ELLOIE to fall on top of her which caused severe and permanent injuries.

f.   The collision caused the Plaintiff STEVEN ELLOIE JR. to violently fall to the floor while eating his breakfast in the cafeteria which caused severe and permanent injuries.

g.   At the time of the incident the Plaintiff SHANTELL DIXON was on Deck 3 with JERENISE JASON and CHESITY BOUTTE.  The force of the collision caused CHESITY BOUTTE to fall on top of SHANTELL DIXON which caused her severe and permanent injuries.

h.   At the time of the incident the Plaintiff S.E., a minor, was standing at a dining table with STEVEN ELLOIE and LATONYA ELLOIE.  The force of the collision violently jerked S.E. back and forth which caused her severe and permanent injuries.

i.   At the time of the incident the Plaintiff JERENISE JASON was sitting and eating breakfast on Deck 3.   JERENISE JASON got up to take photographs with SHANTELL DIXON and CHESITY BOUTTE.  The force of the collision caused CHESITY BOUTTE to fall on JERNISE JASON who fell on an another Carnival passenger which caused her severe and permanent injuries

j.   At the time of the incident Plaintiff ALONZO JASON was seated at the breakfast table and the collision caused him to violently crash into the table which caused him severe and permanent injuries.

k.  At the time of the incident the Plaintiff SHANONA MCCELOS was sitting in the dining area.  The force of the collision caused MCCELOS to strike a table and jerk backwards which caused her severe and permanent injuries.

l.  At the time of the incident the Plaintiff J.M., a minor was sleeping on the top bunk of his cabin bunk.  The force of the collision caused him to smack his head.  After hitting his head J.M. attempted to climb down from his bunk bed and fell on his left knee.  As a result of the collision J.M. suffered severe and permanent injuries.

m.  At the time of the incident the Plaintiff JIREIA MCCELOS was sleeping in her cabin.  JIREIA MCCELOS suddenly woke up when she realized her body was being pushed into the wall of her cabin.  JIREIA MCCELOS got out of her cabin bed and the vessel suddenly rocked again. The momentum of the vessel caused JIREIA MCCELOS caused her to fall backwards, strike her back on the cabin desk and fall forward landing directly onto her knees.  The impact of striking Carnival's cabin furniture and falling on her knees caused JIREIA MCCELOS severe and permanent injuries.

n.  At the time of the incident the Plaintiff CORNELIUS MCCELOS was asleep in his cabin bed.  The collision caused him to strike the right side of his head on the nightstand next to his bed.  CORNELIUS MCCELOS got out of his bed and the ship rocked again and caused him to fall down directly onto his knees.  This collision caused CORNELIUS MCCELOS sever and permanent injuries.

o.  At the time of the incident the Plaintiff MONIQUE JASON was walking between the bed and the dresser of her cabin.  The collision caused her to strike her left knee and upper thigh against the dresser, strike the mirror with her left shoulder, and fall onto her bed.  This caused MONIQUE JASON severe and permanent injuries.

p.  Plaintiff DOLORES JASON was on Deck 9 at the time of the collision.  The momentum of the collision caused DOLORES JASON to her head side to side which caused her severe and permanent injuries.

q.  At the time of the incident Plaintiff STEPHANIE REED was sitting down on Deck 9.  The force of the collision caused her to jerk forward and backwards into her chair.  The force also caused STEPHANIE REED to slam her right leg into a chair.

r.  The Plaintiff HANNAH JASON suffered injuries including but not limited to her neck and lower back pain.

s.  At the time of the incident Plaintiff LONNIE REED was taking a shower.  The force of the collision caused him LONNIE REED to slip and fall and land on his back.  The collision caused LONNIE REED severe and permanent injuries.

t.  At the time of the incident the Plaintiff CARAMECA JASON was standing by the elevators to go to the dining hall with her nephew.  The force of the collision caused her nephew to fall onto her body and smash her back into a nearby poll.

u.  At the time of the incident Plaintiff LATONYA ELLOIE was standing looking at other ships.  AS LATONYA ELLOIE turned away, the force of the collision caused her to strike her right knee on the corner of a booth, lose her balance, turn to the right and fall into a different booth.

v.  At the time of the incident Plaintiff STEVEN ELLOIE, SR. was standing on a balcony.  STEVEN ELLOIE SR. attempted to turn to his right to get away from potential debris from the collision which caused him to suffer severe and permanent injuries.

w.  At the time of the incident the Plaintiff KIANYO FOUCHA was in her cabin shower.  The collision caused KIANYO FOUCHA to fall forward and out of the shower, striking her knees on the hard bathroom floor.  When FOUCHA attempted

to stand up she slipped and fell backwards striking her shoulder on the toilet.  The collision caused FOUCHA severe and permanent injuries.

x.  At the time of the incident the Plaintiff C.F., a minor, was on his cabin balcony watching ships.  C.F.'s sister pulled C.F. back away from the balcony in an effort to protect him during the collision.  C.F. fell backwards and struck his head on a balcony metal table which caused him severe and permanent injuries.

y.  At the time of the incident the Plaintiff MELJANAY MEREDITH was on her cabin balcony.  MELJANAY MEREDITH reached to pull her 13-year-old brother C.F. away from the railing of the balcony to protect him during the collision. MEREDITH fell backwards and struck her back on the metal balcony chairs which caused her severe and permanent injuries.

z.  At the time of the incident the Plaintiff DORA CUREAUX was sitting in her motorized chair in one of the restaurants at the back of the ship.  The force of the collisions caused DORA CUREAUX to go backwards and lose balance.  DORA CUREAUX was forced to break and prevent herself from falling out of her motorized chair by smacking the stump of her previously amputated right forearm which caused her severe and permanent injuries.

aa. At the time the Plaintiff MARY BEAUCHAMP was in her cabin sitting on the side of her cabin bed.  The force of the collision caused MARY BEAUCHAMP to fall off the bed and hit her scooter which caused her severe and permanent injuries.

bb. At the time of the incident the Plaintiff ERRICK BEAUCHAMP was in his cabin sitting on the top bunk.  The force of the collision caused ERRICK BEAUCHAMP to smash his head against the cabin wall which caused severe and permanent injuries.

cc. At the time of the incident Plaintiff SHARONA BEAUCHAMP was sitting on her cabin bed and the force of the collision caused her to violently jerk forward and backward which caused her severe and permanent injuries.

dd. The Plaintiff DELORES JONES suffered injuries including but not limited to her back.

ee. At the time of the incident Plaintiff RAYMOND RUPERT was having breakfast with his family in the Platinum dining room at table #527.  This table was closest to the Carnival *Glory*'s window where the collision occurred.  The bow of the Carnival *Legend* came through the window where RAYMOND RUPERT was sitting.  The debris and impact of the collision caused RAYMOND RUPERT severe and permanent injuries.

ff. The Plaintiff MICHELLE RUPERT was having breakfast with her family in the Platinum dining room at table #527.  This table was closest to the window where the collision occurred.  The bow of the Carnival *Legend* came through the Carnival *Glory*'s window where MICHELLE RUPERT was sitting.  The debris and impact of the collision caused MICHELLE RUPERT severe and permanent injuries.

gg. The Plaintiff HANNAH RUPERT was having breakfast with her family in the Platinum dining room at table #527.  This table was closest to the window where the collision occurred.  The bow of the Carnival *Legend* came through the Carnival *Glory*'s window where HANNAH RUPERT was sitting.  The debris and impact of the collision caused HANNAH RUPERT severe and permanent injuries.

hh. The Plaintiff ABIGAIL RUPERT was having breakfast with her family in the Platinum dining room at table #527.  This table was closest to the window where the collision occurred.  The bow of the Carnival *Legend* came through the Carnival *Glory*'s window where ABIGAIL RUPERT was sitting.  The debris and impact of the collision caused ABIGAIL RUPERT severe and permanent injuries.

ii. The Plaintiff BETHANY RUPERT was having breakfast with her family in the Platinum dining room at table #527. This table was closest to the window where the collision occurred. The bow of the Carnival *Legend* came through the Carnival *Glory*'s window where BETHANY RUPERT was sitting. The debris and impact of the collision caused BETHANY RUPERT severe and permanent injuries.

jj. The Plaintiff VICTORIA RUPERT was having breakfast with her family in the Platinum dining room at table #527. This table was closest to the window where the collision occurred. The bow of the Carnival *Legend* came through the Carnival *Glory*'s window where VICTORIA RUPERT was sitting. The debris and impact of the collision caused VICTORIA RUPERT severe and permanent injuries.

kk. The Plaintiff J.R. was having breakfast with his family in the Platinum dining room at table #527. This table was closest to the window where the collision occurred. The bow of the Carnival *Legend* came through the Carnival *Glory*'s window where J.R. was sitting. The debris and impact of the collision caused J.R. RUPERT severe and permanent injuries.

ll. The Plaintiff KALEB SCHULER was having breakfast with his girlfriend's family in the Platinum dining room at table #527. This table was closest to the window where the collision occurred. The bow of the Carnival *Legend* came through the Carnival *Glory*'s window where KALEB SCHULER was sitting. The debris and impact of the collision caused KALEB SCHULER severe and permanent injuries.

19.   **INJURIES**. As a direct and proximate result of Carnival's negligence, the Plaintiffs suffered injuries which include but are not limited to the follow:

a. The Plaintiff THERESA BURTON suffered injuries including but not limited to her knees.

b. The Plaintiff CHESITY BOUTTE suffered injuries including but not limited to her left knee, hip and back.

c.   The Plaintiff TORIN HURST suffered injuries including but not limited to her right knee and lumbar spine herniation at L4-L5.

d.   The Plaintiff BRITTANY ELLOIE suffered injuries including but not limited to bulging discs in her cervical spine and a lumbar spine disc herniation.

e.   T.H., a minor child suffered injuries to her left arm.

f.   The Plaintiff STEVEN ELLOIE JR. suffered injuries including but not limited to herniated and bulging discs of the lumbar and cervical spine.

g.   The Plaintiff SHANTELL DIXON suffered injuries including but not limited to a herniated and annulus tear of the C5-C6 disc and herniated disc at C6-C7 in the cervical spine

h.   S.E., a minor, suffered injuries including but not limited to the neck and back.

i.   The Plaintiff JERENISE JASON suffered injuries to bulging discs in the lumbar and cervical spine at L3-L4, L5-S1, C4-C5, and C5-C6.

j.   The Plaintiff ALONZO JASON suffered injuries including but not limited to the ribs, right and left knees and lumbar spine disc herniation and annulus tear at L3-L4 and disc herniation at C5-C6 and C6-C7.

k.   The Plaintiff SHANONA MCCELOS suffered injuries including but not limited to her left knee, lumbar spine disc herniation at L3-L4, and cervical disc protrusion at C6-C7.

l.   J.M., a minor suffered injuries including but not limited to his head, left knee and back.

m.   The Plaintiff JIREIA MCCELOS suffered injuries including but not limited to her neck, low back and right knee.

n.   The Plaintiff CORNELIUS MCCELOS suffered injuries including but not limited to his head, knees and neck.

o. The Plaintiff MONIQUE JASON suffered injuries including but not limited to low back, right and left hips, left shoulder, left arm and left knee.

p. The Plaintiff DOLORES JASON suffered injuries including but not limited to neck and low back pain.

q. The Plaintiff STEPHANIE REED suffered injuries including but not limited to her neck, low back and right leg.

r. The Plaintiff HANNAH JASON suffered injuries including but not limited to her neck and lower back pain.

s. The Plaintiff LONNIE REED suffered injuries including but not limited to lower back.

t. The Plaintiff CARAMECA JASON suffered injuries including but not limited to disc herniation and annulus tear of the lumbar spine at L5-S1 and herniation of the cervical spine at C4-C5.

u. The Plaintiff LATONYA ELLOIE suffered injuries including but not limited to neck, lower back, right hip and right knee pain.

v. The Plaintiff STEVEN ELLOI, SR. suffered injuries including but ot limited to disc herniation of the spine at L5-S1with impingement of the S1 nerve root on both sides, disc herniation of the lumbar spine at L4-L5, and L3-L4 with encroachment on the right inferior neural foramen.

w. The Plaintiff KIANYO FOUCHA suffered injuries including but not limited to her head, neck, back, right and left shoulders and right knee.

x.  C.F., a minor, suffered injuries including but not limited to her head, neck and upper back.

y. The Plaintiff MELJANAY MEREDITH suffered injuries including but not limited to her upper and mid back.

z.  The Plaintiff DORA CUREAUX suffered injuries including but not limited to her lumbar spine.

aa. The Plaintiff MARY BEAUCHAMP suffered injuries including but not limited to her neck, knee and back.

bb. The Plaintiff ERRICK BEAUCHAMP suffered injuries including but not limited to his head.

cc. The Plaintiff SHARONA BEAUCHAMP suffered injuries including but not limited to her neck and back.

dd. The Plaintiff DELORES JONES suffered injuries including but not limited to her back.

ee. The Plaintiff RAYMOND RUPERT suffered injuries including but not limited to his wrist, bruising, abrasions, lacerations and psychological trauma.

ff. The Plaintiff MICHELLE RUPERT suffered injuries including but not limited to her bruising, abrasions, lacerations, ankle, hip and psychological trauma.

gg. The Plaintiff HANNAH RUPERT suffered injuries including but not limited to her hip, bruising, abrasions, lacerations and psychological trauma.

hh. The Plaintiff ABIGAIL RUPERT suffered injuries including but not limited to her psychological trauma.

ii. The Plaintiff BETHANY RUPERT suffered injuries including but not limited to her psychological trauma.

jj. The Plaintiff VICTORIA RUPERT suffered injuries including but not limited to her psychological trauma.

kk. The Plaintiff J.R. suffered injuries including but not limited to J.R.'s psychological trauma.

ll. The Plaintiff KALEB SCHULER injuries including but not limited to psychological trauma.

24

These are extremely painful injuries and have caused and will continue to cause severe disability with permanent impairment.  These permanent injuries significantly affect the life and abilities of the Plaintiffs.

20.     **DAMAGES.**  Carnival's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages  recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By:     *s/ John H. Hickey*_____
                **JOHN H. HICKEY**, **ESQ.** (FBN 305081)
                hickey@hickeylawfirm.com
                federalcourtfilings@hickeylawfirm.com
                **SARAH A. LOBEL, ESQ.** (FBN 88716)
                slobel@hickeylawfirm.com
                **HICKEY LAW FIRM, P.A.**
                1401 Brickell Avenue, Ste. 510
                Miami, Florida 33131-3504

Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorney for the Plaintiff*